IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                        Case No. 25-CR-1075-GBW

JOSE FLORES-PENALOZA,

    Defendant.

## **MOTION TO DISMISS FOR INPROPER VENUE**

      Mr. Flores-Penaloza, by and through his attorney of record, Victoria Trull, hereby moves this Court to dismiss all counts containing in the information filed with the Court in Document 5, because this Court is not the proper venue for any of the charges. Pursuant to Federal Rule of Criminal Procedure 12 provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Determination of proper venue in a criminal case requires determination of where the crime was committed. U.S.C.A.Const.art. 3, § 2, cl. 3. Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. Fed. R. Crim. P. 18. The alleged illegal entry into the United States which forms the basis of all three counts contained in the information, occurred within the District of Arizona, not New Mexico. Therefore, the United States District Court of Arizona, is the proper venue for this case.

I.   BACKGROUND

The government filed a complaint against Mr. Flores-Penaloza on May 2, 2025. (Doc 1). The complaint alleged that he entered the United States on April 29, 2025 through Hidalgo County in the state of New Mexico without lawful permission in violation of 8 U.S.C. §1325(a)(1). The complaint also alleges that he violated 50 U.S.C. §797 and 18 U.S.C. §1382 by entering through a designated military property called generally, the New Mexico National Defense Area, which parallels the international border in New Mexico. The complaint states that Mr. Flores-Penaloza was provided notice of the area designation, the day *after* he was apprehended.

On the date of his preliminary hearing, May 7, 2025, the government foreclosed his opportunity to challenge whether there was sufficient probably cause for his arrest by filing an information, accusing him of the same charges and foreclosing any pre-trial judicial review of the validity of the charges.

On May 6, Counsel received initial disclosure consisting of 1) another copy of the complaint, 2) a criminal and immigration history report, 3) an I-213 report (I-213, Ex 3), 4) copy of his immigration detainer, 5) a copy of the federal register designating federal land, and 6) a copy of the I-213. On May 16, 2025 counsel sent a request for additional discovery. On May 16, 2025 the Government sent 1) An unsigned Memorandum of Investigation entitled "Sworn Statement for Flores-Penaloza" Dated on May 1, 2025 and taken by USCBP in Lordsburg, New Mexico ("Sworn Statement" Ex 2) and 2) A Memorandum of Investigation titled "G-166c" by Agent Kendrick Staheli dated May 1, 2025 ("G-166c" Ex 1). Counsel assumes these last two documents were provided pursuant to the Government's duty under *Brady*.

This Motion to Dismiss for Improper Venue follows.

##    II.        LAW AND ARGUMENT

Improper entry by means of an improper time or place is a petty misdemeanor federal offense that requires the Government to prove that the defendant: (1) was an alien; (2) who entered or attempted to enter the United States; and (3) entered or attempted to enter at a time or place other than as designated by immigration officers. 8 U.S.C. § 1325(a)(1). An unlawful entry is treated as a continuing violation only to the extent it is alleged to be the predicate act to a 'found in' offense. *United States v. Kreider*, No. 06 CR 00251 S, 2006 WL 2604832, at *2 (W.D.N.Y. Sept. 11, 2006). The offense of illegal entry or illegal attempt is normally uncomplicated and is complete as soon as the entry or attempt is made. See generally H.R.Rep. No. 1365, 82d Cong., 2d Sess. (1952), reprinted in 1952 U.S.C.C.A.N. 1653, 1683 ("Normally an entry occurs when the alien crosses the border of the United States and makes a physical entry, and the question of whether an entry has been made is susceptible of a precise determination."). *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995).

In this case, Mr. Flores-Penaloza is only being charged with the misdemeanor offense of improper entry. There is no "found in" provision like there is for the charge of illegal re-entry like 8 U.S.C. § 1326. Therefore, wherever he placed his foot onto United States soil outside of an official port of entry, is where the offense is committed and completed.

In the "Sworn Statement" provided by the government[1], an agent asks:

Q: Where were you going?
A: Tucson Arizona.
…
Q: When, where, and how did you enter the United States this last time?

---

[1] Counsel recognizes this statement is unsigned and maintains the right to challenge the admissions at trial. However, for the point of determining venue, Counsel poses that this would be evidence the government would use at trial to establish admission of the unlawful entry and therefore, for the purposes of this motion, presents it in light most favorable to the government as it is their burden to show where the offense was committed and that an offense occurred.

3

A: I jumped over the small fence in the mountains east of Agua Prieta, Sonora, Mexico. It was April 29, 2025, at 8:00am.[2]

By his own statement, he entered near Agua Prieta, Sonora, Mexico which is on the border of Arizona. The port of entry that serves Agua Prieta, Sonora, Mexico is Douglas, Arizona. Corroborating the assertion that he entered across the Arizona border is the fact that, according the G-166c, written by Agent Kendrek Staheli, he was picked up around 6:30pm on April 30, 2025 by Border Patrol Agents, including Agent Staheli, assigned to the Douglas Arizona Border Patrol Station's Horse Patrol Unit. Agent Staheli was assigned to the east side of the Douglas Area of Authority, east of Douglas, Arizona when he and other agents apprehended Mr. Flores-Penaloza. According to Agent Staheli, he was arrested for entering illegally and taken to the Douglas Border Patrol Station. Mr. Flores-Penaloza was then transferred to Lordsburg, New Mexico.

On May 1, 2025, the day after his apprehension in Arizona and two days after his alleged entry into the United States, he was interviewed by Agent Demitrios Campbell in Lordsburg, New Mexico, where, as stated above, he stated he entered near Agua Prieta, Sonora on the Arizona border. Agent Campbell then drafts a report stating that Agent Staheli was not, in fact, in the Douglas Area of Responsibility but rather, he was in the Peloncillo Mountains of New Mexico[3], and that at 9:45pm he found Mr. Flores-Penaloza near Antelope Wells, New Mexico. From there, he was transferred to Lordsburg New Mexico for processing. Interestingly, Agent Campbell's report places Agent Staheli in a different state, a different area, and apprehending

---

[2] He is also asked questions regarding whether he saw any signs or warnings or otherwise knew he was entering a national defense area, to which he responded in the negative to both similarly posed questions.
[3] The Peloncillo Mountains also cross into Southeast Arizona which would also fall into the Douglas Area of Responsibility

Mr. Flores-Penaloza over three hours after he actually found him. While traveling from Douglas to Antelope Wells, though mountains on horseback in the night would be impressive, the two accounts do not match.

Even though the "Sworn Statement" drafted by Agent Campbell says that Mr. Flores-Penaloza was going to Tucson, Arizona and entered near Agua Prieta, Sonora (located on the border of Arizona)[4], in his I-213 report, Agent Campbell states that Mr. Flores-Penaloza said he entered "25 miles west of Antelope Wells, New Mexico." By Agent Campbell's draft of Mr. Flores-Penaloza's statement, Mr. Flores-Penaloza did not say that at all. He never mentioned "25 miles" he never mentioned "Antelope Wells, New Mexico." Agent Campbell did say that Mr. Flores-Penaloza stated he entered on April 29, 2025 at 8:00am. This is also what was written on the "Sworn Statement." It is unclear why Agent Campbell would use some parts of the information from the "Sworn Statement" such as the date and time of entry and whether he knew he was entering a National Defense Area, yet changed the location of the alleged reentry. It's possible that if they did not change his words, they wouldn't be able to charge him with the fancy new charges. But, it is unknow for certain.

However, in his interview, Mr. Flores-Penaloza stated he entered near Agua Prieta, Sonora, across from the Arizona border. Almost 36 hours later, he is found by Border Patrol Agents assigned to the Douglas Area of Responsibility out of the Douglas, Arizona Border Patrol Station. He is arrested and processed by Douglas, Arizona border patrol agents. The only first

---

[4] It is unknown what happened after his entry, approximately 34 to 37 hours prior, depending on which Agent you believe, but while it didn't appear the group made much headway during that time, it is possible the group was lost. The region of hills straddles the borders of Arizona and New Mexico and even if they crossed back and forth between the states in that area, it does not change that the government has an alleged admission of entry time and location, which is not in this district.

hand accounts are Mr. Flores-Penaloza and Agent Staheli. Both of those accounts suggest that Mr. Flores-Penaloza should have been charged in Arizona. The proper venue for this case is in the District of Arizona, not the District of New Mexico.

III.    **CONCLUSION**

For the above-mentioned reasons, Counsel requests that this Court find that the District of New Mexico is not the proper venue for this case and dismiss the information in its entirety.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
506 S Main Street, Suite 400
Las Cruces, NM 88001
(575) 527-6930

***Electronically filed May 20, 2025***
By: /s/ Victoria Trull
Victoria Trull
Assistant Federal Public Defender